UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                                          :

DEL MONTE FRESH PRODUCE N.A., INC.,      :
and NETWORK SHIPPING LIMITED,             :
                                       Plaintiffs,   :
                                                           :

                -against-                             :
                                                           :

M/V AFRICA REEFER, her engines, boilers,   :
tackle, furniture, apparel, etc., *in rem*,        :
SEATRADE GROUP N.V., LAVINIA            :
CORPORATION LTD., MELVILLE SERVICES  :
INC., and LASKARIDIS SHIPPING COMPANY  :
LTD., *in personam*,                             :
                                       Defendants.  :            12 Civ. 3597 (JPO)
                                                              :
------------------------------------------------------------ X      MEMORANDUM AND
                                                             :                  ORDER
SEATRADE GROUP N.V.,                        :
                            Cross-Claimant,  :
                                                             :

                -against-                             :
                                                           :

LAVINIA CORPORATION LTD, MELVILLE,    :
SERVICES INC., and LASKARIDIS SHIPPING  :
COMPANY, LTD.,                              :
                                     Cross-Defendants.  :
                                                             :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

     This is a maritime action involving alleged damage to a cargo of 36,073 cartons of bananas and 12,444 cartons of melons due to the failure of the cooling systems in the M/V Africa Reefer in December 2012. Plaintiffs have informed the Court that one of the defendants, Melville Services, no longer exists. Another defendant, Seatrade Group N.V. ("Seatrade"), has cross-claimed against the remaining defendants—Lavinia Corporation, Ltd. ("Lavinia") and

Laskaridis Shipping Company, Ltd. ("Laskaridis")—for breach of contract.  Laskaridis and Lavinia have moved to dismiss the complaint and the cross-claim.  For the reasons that follow, both motions are granted and this case is dismissed.

**I.      Motion to Dismiss the Complaint**[1]

Lavinia and Laskaridis (for purposes of this section, "Defendants") have moved to dismiss the Complaint due to lack of personal jurisdiction.  In response, Plaintiffs have adduced two bases for such jurisdiction: (1) a forum selection clause in the unissued bill of lading in which Defendants consented to jurisdiction for purposes of New York's long arm statute, N.Y. C.P.L.R. § 302; and (2) sufficient national contacts to establish jurisdiction under Federal Rule of Civil Procedure 4(k)(2).  Each argument is addressed in turn.

**A.     Standard of Review**

"[T]he law of the forum state–here, New York–governs the issue of personal jurisdiction in admiralty cases."  *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 50 (2d Cir. 1991).  "On a [Rule] 12(b)(2) motion to dismiss for lack of personal jurisdiction, plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (citation omitted).  However, at this pre-discovery stage, "[p]laintiffs need only make a prima facie showing that personal jurisdiction exists."  *Sea Trade Mar. Corp. v. Coutsodontis*, No. 09 Civ. 488, 2012 WL 3594288, at *6 (S.D.N.Y. Aug. 16, 2012) (citing *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985)).  "The Court reviews the complaints and affidavits in a light most favorable to Plaintiffs, but it does not accept

---

[1] Familiarity with the factual and procedural background of the case is assumed.

conclusory allegations or draw argumentative inferences." *In re Terrorist Attacks on September 11, 2001*, 392 F. Supp. 2d 539, 556 (S.D.N.Y. 2005) *aff'd*, 538 F.3d 71 (2d Cir. 2008) (internal citations omitted).

### B. Forum Selection Clause in the Unissued Bill of Lading

Plaintiffs argue that the Network bill of lading creates personal jurisdiction by virtue of its forum selection clause, which provides that "all legal actions alleging any claim, causes of action or any dispute whatsoever, arising under or in connection with this Bill of Lading shall be subject to the sole and exclusive jurisdiction of the United States District Court, Southern District of New York . . . ." Defendants do not dispute the validity of this forum selection clause, nor do they deny that unissued bills of lading may, in some cases, enjoy binding effect. *See, e.g.*, *Russul Corp. v. Zim Am. Integrated Shipping Services Co., Inc.*, No. 06 Civ. 37, 2009 WL 466149, at *2 (S.D.N.Y. Feb. 25, 2009). Rather, Defendants argue that they never consented to the forum selection clause because they never granted Seatrade authority to bind them to the terms of a bill of lading (and any forum selection clauses contained therein).

Plaintiffs allege that the bill of lading would have been issued by Plaintiff Network, which enjoyed such authority by virtue of its charter with Seatrade. Seatrade, in turn, was empowered to issue bills of lading by virtue of the Pool Agreement. Specifically, pursuant to the Pool Agreement, Seatrade was authorized "by each and every Member" to "have bills of lading and/or waybills issued in conformity with mate's receipts . . . ." Pool Agreement Cl. 2.1, Cl. 2.1.g. Plaintiffs argue, and Defendants agree, that Melville—as the ship owner—would therefore be bound by the bill of lading (and its forum selection clause).

The critical question, however, is whether Defendants, not Melville, conferred such authority on Seatrade. Clause 2 of the Pool Agreement covers only "Member[s]." Plaintiffs

3

offer two reasons to conclude that Lavinia conferred such authority (but say virtually nothing about Defendant Laskaridis).

First, Plaintiffs suggest in their brief that "it is unclear whether the authority was granted by MELVILLE, LAVINIA, or both," adding that "it is uncertain whether [the Pool Agreement] includes Representative Members." This argument does not succeed. The Pool Agreement's "Definitions" page distinguishes between a "Member" and a "Representing Member." Whereas a "Member" is "the Owner or disponent Owner of a Pooled Vessel who signed the Addendum with Seatrade," a "Representing Member shall mean a party that has a valid proxy to bind a Member in all Pool related matters toward SRC/Seatrade and or the other Pool Members and as such has co-signed the Addendum for the Vessel." Given these distinct definitions in the Pool Agreement, there is no reason to believe that the grant of authority to Seatrade to enter into bills of lading on behalf of a "Member" also covers a "Representing Member"—and all parties agree that Lavinia is a "Representing Member" for purposes of the Pool Agreement. Thus, given that Lavinia was neither a "Member" pursuant to the Pool Agreement, nor a "remote owner" of the sort that can be held to the terms of a bill of lading signed for and on behalf of the master, *see, e.g.*, *Asoma Corp. v. SK Shipping Co., Ltd.*, 467 F.3d 817, 827 (2d Cir. 2006), the unissued bill of lading does not support a finding of personal jurisdiction over Lavinia.[2]

Second, Plaintiffs argue in the alternative that an Addendum to the Pool Agreement decides the matter in favor of Lavinia's consent. The Addendum states:

---

[2] Seatrade has filed an opposition to the motion to dismiss in which it argues that the Court should rely on alter ego or veil piercing doctrine to treat Lavinia and Laskaridis as a single entity for purposes of this motion. The Court need not address that argument because it concludes that it lacks personal jurisdiction over Lavinia and Plaintiffs have not alleged any facts that would support an exercise of personal jurisdiction over Laskaridis.

> The OWNER [Melville], the REPRESENTING MEMBER [Lavinia] and SEATRADE hereby agree that any and all disputes arising hereunder will in the first instance be decided by the competent Court in Rotterdam, provided always that SEATRADE may initiate proceedings against the OWNER and/or against the REPRESENTING MEMBER before the Courts of the country and place which otherwise would have had jurisdiction.

In Plaintiffs' view, "since it cannot be in dispute that MELVILLE granted authority, LAVINIA has consented to jurisdiction wherever jurisdiction can be established over MELVILLE." This argument fails because, by its plain language, the Addendum does not purport to authorize an exercise of jurisdiction by a non-signatory over Lavinia, nor does it authorize either Melville or Seatrade to enter into other agreements that result in a third party's exercising jurisdiction over Lavinia pursuant to a forum selection clause.

Accordingly, Plaintiffs' attempts to ground personal jurisdiction on the Pool Agreement and the Addendum do not succeed. Plaintiffs do not argue in the alternative that they can obtain jurisdiction pursuant to some other theory under N.Y. C.P.L.R. § 302, so the Court does not consider any other bases for jurisdiction pursuant to the New York long arm statute. Nor do Plaintiffs argue that N.Y. C.P.L.R. § 301 supports jurisdiction, so any such claims are hereby deemed waived.

### C. National Contacts Under Rule 4(k)(2)

Federal Rule 4(k)(2) provides that, "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." As Judge Calabresi has explained:

> Rule 4(k)(2) was specifically designed to "correct[] a gap" in the enforcement of federal law in international cases. The gap arose from the general rule that a federal district court's personal jurisdiction extends only as far as that of a state court in the state where the federal court sits . . .
>
> Accordingly, Rule 4(k)(2) now allows the exercise of personal jurisdiction by a federal district court when three requirements are met: (1) the claim must arise under federal law; (2) the defendant must not be "subject to jurisdiction in any state's courts of general jurisdiction"; and (3) the exercise of jurisdiction must be "consistent with the United States Constitution and laws."

*Porina v. Marward Shipping Co., Ltd.*, 521 F.3d 122, 126-27 (2d Cir. 2008) (internal citations and quotation marks omitted). Because this case is based in admiralty and maritime law, it arises under federal law and satisfies the first requirement of Rule 4(k)(2). *See id.* In light of the Court's analysis of N.Y. C.P.L.R. §§ 301 and 302, Defendants are not subject to the jurisdiction of any state court of general jurisdiction. This satisfies the Rule's second requirement.

The principal point of dispute is the third requirement: that the exercise of jurisdiction be "consistent with the United States Constitution and laws." *Id.* at 127. Specifically, Defendants dispute that an exercise of personal jurisdiction would comport with the due process rights protected by the Fifth Amendment. The Court looks again to Judge Calabresi's opinion in *Porina*:

> Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not offend traditional notions of fair play and substantial justice. To determine whether this is so, we apply a two-step analysis in any given personal jurisdiction case. First, we ask whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction. In the case before us, the question is whether [the defendant] has sufficient affiliating contacts with the United States in general, rather than with New York in particular, with which it has none. If the defendant has sufficient minimum contacts, we proceed to the second stage of the due process inquiry, and consider whether the

> assertion of personal jurisdiction is reasonable under the circumstances of the particular case. A defendant's contacts with the particular federal district in which the suit was filed, or lack thereof, may be relevant in determining, at the second stage of the analysis, whether it would be reasonable, in all the circumstances, to exercise personal jurisdiction.

*Id.* (quotation marks and internal citations omitted). The personal jurisdiction inquiry thus involves examination of minimum contacts and reasonableness under the circumstances.

Plaintiffs allege three facts in support of a finding of jurisdiction: (1) "Lavinia was and is the owner of various commercial vessels that have had 178 ports of call in the United States in the period from January 2006 to July 2012"; (2) Seatrade chartered the M/V Africa Reefer to Newark, an entity with offices in Florida, with knowledge that the ship would transport fresh fruit to New Jersey; and (3) The bill of lading selected a New York forum and American law. All of these arguments apply to Lavinia; Plaintiffs decline to explain the basis of this Court's personal jurisdiction over Laskaridis. In any event, even at this pre-discovery stage, these facts do not support a finding of personal jurisdiction over Lavinia because Plaintiffs cannot demonstrate the requisite minimum contacts or the reasonableness of an American forum.

By referring to the charter contract and bill of lading at issue in this case, Plaintiffs gesture toward a basis for *specific* jurisdiction over Lavinia. *See Porina*, 521 F.3d at 128 ("'*Specific* jurisdiction exists where a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984))). These contacts, however, do not suffice because it is well-established that a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Here, there was no such purposeful availment by Lavinia. First, Lavinia was not a party

7

to either the charter contract or the bill of lading. While Seatrade was acting for the account and risk of the relevant "Member," namely Melville, it was not acting on behalf of a "Representing Member" such as Lavinia. The fact that Network, the charterer, was based in Florida does not mean that Lavinia availed itself of the American forum by indirectly doing business with Network. Second, even if Lavinia were a party, "the decision to bring the [M/V Africa Reefer] to the United States was made . . . by the ship's charterers" and not by Lavinia. *See Porina*, 521 F.3d at 128. The M/V Africa Reefer was under the direction and control of Network, Seatrade, and Melville—not Lavinia—when it was scheduled to deliver the cargo at issue to the United States. While "plaintiffs have certainly shown that [Lavinia] could reasonably expect that [the] ship would have repeated contacts with the United States . . . 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *See Porina*, 521 F.3d at 128 (quotation marks omitted) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)).

Plaintiffs also argue that Lavinia is subject to general jurisdiction by virtue of the fact that it owns commercial ships that have had 178 ports of call in America over the past six years. When a plaintiff invokes Rule 4(k)(2) on a theory of general jurisdiction, it "must satisfy [a] more stringent minimum contacts test . . . by showing that [the defendant] had continuous and systematic general business contacts with the United States." *Porina*, 521 F.3d at 128 (citations omitted). "This standard requires plaintiff to prove that defendant's contacts approximate physical presence in the United States." *BBC Chartering & Logistic GmbH & Co. KG v. Usiminas Mecanica S/A*, No. 08 Civ. 200, 2009 WL 259618, at *5 (S.D.N.Y. Feb. 4, 2009) (quotation marks and citation omitted).

With respect to Plaintiffs' argument for general jurisdiction, this case is on all fours with *Porina*, where the Second Circuit concluded that the minimum contacts test was not satisfied where a vessel's charterer—rather than its owners—directed the vessel to call at American ports. *See* 521 F.3d at 128-29 ("That [the defendant] foresaw that the [vessel] would visit the United States does not, without more, establish that [the defendant] purposefully engaged in the continuous and systematic business contacts with this country that are needed to support general personal jurisdiction. And, significantly, the ship's contacts with the United States could transpire, or not, at the charterers' sole discretion."). Absent evidence that Lavinia, as owner of the M/V Africa Reefer, exercised some control over the vessel's destination and thereby purposefully availed itself of the American forum, this Court must hold that due process prohibits an assertion of personal jurisdiction over Lavinia.

Even if Plaintiffs could allege facts constituting minimum contacts, the Court would nonetheless conclude that an exercise of personal jurisdiction would be unreasonable. Factors relevant to a reasonableness determination include:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*TAGC Mgmt., LLC v. Lehman*, No. 10 Civ. 06563, 2011 WL 3796350, at *6 (S.D.N.Y. Aug. 24, 2011) (citation omitted). Here, all of these factors weigh against an exercise of personal jurisdiction. Defendants are foreign corporations with no local contacts, offices, employees, telephone listings, or designated agents in the United States. The United States has little interest in this dispute, Plaintiffs have not demonstrated that it would be more convenient for them—or

9

Defendants—to litigate this case in the United States, and there are few, if any, efficiency or substantive social policy gains to be achieved by resolving this dispute in an American court.

Accordingly, Defendants' motion to dismiss the Complaint for lack of personal jurisdiction is granted.

## II.  Motion to Dismiss the Cross-Claim

Lavinia and Laskaridis (for purposes of this section, "Cross-Defendants") have moved to dismiss Seatrade's cross-claim due to lack of personal jurisdiction or, in the alternative, to stay the cross-claim pending resolution of alternative dispute resolution procedures. This motion relies on a forum selection clause and a dispute resolution clause in the varied contracts between Seatrade and Lavinia.[3]

Article 17.1 of the Pool Agreement provides that "the parties hereby agree that any and all disputes arising hereunder will in the first instance be decided by the competent Court in Rotterdam, provided always that Seatrade . . . may initiate proceedings against a Member before the Courts of the country and place which otherwise would have had jurisdiction." Article 17.3 provides that "[b]efore initiating proceedings, Seatrade or a Member shall first submit the dispute to a committee of representatives of Members, consisting of three persons to be appointed by the AB with the object that such committee—after having heard the parties—will endeavour to conclude an amicable settlement between parties." Article 17.4 provides that "if a settlement has

---

[3] Laskaridis is not a party to these agreements, but the parties appear to agree that it should be treated as such for purposes of this motion because Seatrade's claims against Laskaridis arise from alleged breach of the Pool Agreement. This makes sense: either Laskaridis is a party to the Agreement, in which case it should be treated as such, or it is not a party to the Agreement, in which case Seatrade's cross-claim under the Agreement fails as a matter of law and should be dismissed on that ground. In either event, in light of the Court's conclusion that it lacks personal jurisdiction over Laskaridis, the cross-claim must be dismissed.

not been reached between parties within 4 months after the dispute has been submitted to the committee, article 17.1 shall apply." An addendum to the Pool Agreement further provides:

> The OWNER, the REPRESENTING MEMBER, and SEATRADE hereby agree that any and all disputes arising hereunder will in the first instance be decided by the competent Court in Rotterdam, provided always that SEATRADE may initiate proceedings against the OWNER and/or against the REPRESENTING MEMBER before the Courts of the country and place which otherwise would have had jurisdiction.
>
> Before initiating proceedings, SEATRADE or a Member shall pursuant to para 17.3 of the Pool Agreement first submit the dispute to a committee of representatives of Members, consisting of three persons to be appointed by the Advisory Board with the object that such committee—after having heard the parties—will endeavour to conclude an amicable settlement between the parties. If a settlement has not been reached between the parties within four months after the dispute has been submitted to the committee, para 17.1 of the Pool Agreement shall apply.

Here, Melville was the Owner and Lavinia was the Representing Member. The Pool Agreement provides that it should be governed by and construed in accordance with Dutch law.

Cross-Claim Defendants argue that the forum selection clause is valid and that it dictates dismissal of these claims on the ground that only the competent Court in Rotterdam can hear Seatrade's claim. In the alternative, they argue that dispute resolution procedures have not run their course and that the Court should stay the action pending submission of these claims to a committee of representatives of Members of the Seatrade Reefer Pool.

The Supreme Court has explained that "in the light of present-day commercial realities and expanding international trade . . . [a] forum clause should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). The Second Circuit has established a four-part test to determine whether to dismiss a claim on the basis of a forum selection clause:

11

> The first inquiry is whether the clause was reasonably communicated to the party resisting enforcement. The second step requires us to classify the clause as mandatory or permissive, i.e., to decide whether the parties are *required* to bring any dispute to the designated forum or simply *permitted* to do so. Part three asks whether the claims and parties involved in the suit are subject to the forum selection clause.
>
> If the forum clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. The fourth, and final, step is to ascertain whether the resisting party has rebutted the presumption of enforceability by making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007) (quotation marks and internal citations omitted) (emphasis in original). The parties agree that only the second requirement is disputed—specifically, whether the forum selection clause is mandatory or permissive.

The Court, however, need not decide this matter, either through reference to American or Dutch principles of interpretation. As the parties acknowledge, even if the Agreement were permissive, it would authorize only proceedings "before the Courts of the country and place *which otherwise would have had jurisdiction*." The parties agree that Dutch courts do not decide whether a foreign court would possess jurisdiction; by implication, that determination is left to the foreign forum. Thus, under both American and Dutch law, if this Court were to conclude that it lacks personal jurisdiction over Cross-Claim Defendants, then the forum selection clause simply would not apply. The Court has already reached that conclusion with respect to the dispute between Plaintiffs, Lavinia, and Laskaridis, and Seatrade does not argue that any basis for personal jurisdiction exists as to Cross-Defendants beyond those already addressed.

### III.     Conclusion

For the foregoing reasons, the motions to dismiss filed by Lavinia and Laskaridis are both GRANTED.

The Clerk of Court is directed to close the motions at Dkt. Nos. 6 and 30 and to terminate this case.

SO ORDERED.

Dated:  New York, New York
        March 19, 2013

_____
J. PAUL OETKEN
United States District Judge